UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
LISA COALMON

                     Plaintiff,

    -against-

WYANDANCH UNION FREE SCHOOL
DISTRICT, WYANDANCH UNION FREE SCHOOL
DISTRICT BOARD OF EDUCATION, AND DR.
MARY JONES, Individually and in her Official Capacity,

           Defendants.

-------------------------------------------------------------------X

**VERIFIED COMPLAINT**
*Jury Trial Demanded*

Plaintiff, LISA COALMON, by and through her attorneys, RAISER AND KENNIFF, respectfully alleges, upon knowledge as to herself and her own actions, and upon information and belief as to all other matters, as follows:

## JURISDICTION AND VENUE

1. This Court has original jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. §§ 1331 & 1343.

2. Venue is proper in this case pursuant to 28 U.S.C. § 1391 because a substantial part of the events which give rise to Plaintiff's claims took place in Suffolk County, New York, which is located in the Eastern District of New York.

3. All conditions precedent to filing suit have been fulfilled. On or about November 12, 2018, a notice of claim was filed against the Defendants.

## PARTIES

4. Plaintiff LISA COALMON is a 56-year old resident and domiciliary of Suffolk County, New York. At all times relevant, Plaintiff was an "employee" of Defendants as that term is defined by the Title VII of the Civil Rights Act of 1964 ("Title VII").

5. Defendant WYANDANCH UNION FREE SCHOOL DISTRICT (the "District") is a public school district organized and existing under the laws of the State of New York. Its administrative office is located at 1445 Dr. Martin Luther King, Jr. Boulevard, Wyandanch, New York 11798. At all times relevant to this complaint, Defendant District was Plaintiff's "employer," as that term is defined by Title VII.

6. Defendant WYANDANCH UNION FREE SCHOOL DISTRICT BOARD OF EDUCATION (the "Board") is a municipal corporation organized and existing under the laws of the State of New York. Its administrative office is located at 1445 Dr. Martin Luther King, Jr. Boulevard, Wyandanch, New York 11798. At all times relevant to this complaint, Defendant Board was Plaintiff's "employer," as that term is defined by Title VII.

7. Defendant DR. MARY JONES is the Superintendent of Schools at Wyandanch Memorial High School. Its administrative office is located at 1445 Dr. Martin Luther King Jr. Boulevard, Wyandanch, New York 11798. As an individual Defendant Jones had control over the terms and conditions of Plaintiffs employment at the Wyandanch memorial High School. At all times relevant to this complaint, Defendant Jones was Plaintiffs "employer," as that term is defined by Title VII.

## FACTUAL ALLEGATIONS

8. On Mid-September 2017, Board President Charlie Reed confirmed that WASA Union President Sharin Wilson wrote a memo to the Board about Plaintiff's Longevity pay ($1,500). The memo said Plaintiff was not entitled to this payment and that Plaintiff needed to pay the money back. Attached to the memo was a copy of the WASA contract page regarding longevity pay. (Plaintiff had a Board approved contract stating that Plaintiff receives Longevity.) Plaintiff met with the Board President about the memo in dispute and informing him that the memo was inaccurate. The Board President pulled out the letter and let Plaintiff read it. Plaintiff asked him why they were referring to the WASA contract when she had her own contract that superseded the WASA contract. He never got back to Plaintiff as to why. Upon information and belief, this was retaliation for Plaintiff denying WASA president Sharin Wilson a payment that she was not entitled to.

9. On October of 2017, Assistant Superintendent for Human Resources Kester Hodge, in a discussion with Plaintiff, made Plaintiff aware that the Superintendent (Dr. Jones) had the full transcript of what was said in the EEOC investigation on behalf of Bob Howard, the assistant superintendent for business. As part of Howard's EEOC investigation, Plaintiff had given statements in Howard's favor. Also, questions were asked about the Payroll Clerk who was being questioned about an IRS investigation regarding pay garnishments for Sharin Wilson. Hodge also stated Jones was coming after Plaintiff, the Accountant Laurie Dallas, and the Treasurer Winsome Ware for talking to the IRS and the EEOC. At 4:30 P.M. Plaintiff called the Board President (Charlie Reed) to confirm whether the transcript was given to Dr. Jones. He confirmed this saying Jones needed the information, so she could respond.

10. On November 15, 2017, Plaintiff was asked to participate in an investigation regarding an incident involving the Payroll Clerk Michelle Walthall and the Accountant Laurie Dallas. Plaintiff expressed her concern about how investigations were being conducted but no one was investigating why her longevity information was circulated around in the district.

11. In the beginning of December 2017, the Assistant Superintendent for Human Resources Hodge made Plaintiff aware that the Superintendent Jones was looking to move Plaintiff's office. Plaintiff then went into the District clerk's office and called the Board President to confirm. He said there was a discussion about it, but nothing was decided about where Plaintiff would be relocated to. The Board President felt the Mailroom was too far. The Board along with the Superintendent wanted her to sit in a small area by the District Clerk's office where the copy machine and file cabinets were, a much smaller and uncomfortable workspace. Plaintiff expressed her concern about the amount of space and also the confidential information that is exchanged in the District clerk's office and that Plaintiff should not be privy to such information.

12. On December 21st, 2017 Plaintiff received a call from Trustee Tolliver, in which she told him what was going on with the relocation. He had no knowledge of Plaintiff being relocated. He said he would call Trustees Baker and Allen got their votes to reverse the move. He told Plaintiff to speak to Trustee Allen about what was going on and that he (Tolliver) would speak to Trustee Reed.

13. On December 22, 2018, Plaintiff was informed by the Superintendent in writing that Plaintiff would be relocated to the Mailroom. Buildings and Grounds was given notice that her belongings should be moved over the Christmas break. Plaintiff also received an email from the Superintendent that Plaintiff was to participate on January 7, 2018

(pending board President approval) in another investigation with Nawrocki Smith (Districts Internal Auditor).

14. On December 29, 2017, Plaintiff's office was moved over her protests. Jones' nephew, who was also employed by the District, handled the move for the District.

15. On January 7, 2018, Nawrocki Smith approached Plaintiff about participating in the Investigation by the IRS. Plaintiff then called the Board President who had no knowledge of the Investigation.

16. On February 7, 2018, at the combined School Board meeting, Trustee Holliday (VP) and Trustee Robinson voted down Plaintiff's Monthly Claims Auditor report for the first time.

17. On March 14, 2018, at the combined School Board meeting, Trustee Holliday (VP) and Trustee Robinson voted down Plaintiff's Monthly Claims Auditor report.

18. On April 25, 2018, while Plaintiff was doing her job as the Claims Auditor, the Superintendent tried to stop Payroll from going to the bank, instead making it look like Plaintiff was not approving Payroll. Jones claimed that "Heads are going to roll."

19. On April 26, 2018, Plaintiff attended a Special Board Meeting with Board Trustees and Superintendent Jones, as well as Assistant Superintendents for Human Resources and Business. Later, members from the WASA union were called in. In executive session, Trustee Holiday and Plaintiff had a heated discussion. Dr. Jones chimed in and said Plaintiff "disrespected" Holliday and yelled out that Plaintiff had filed a Human Rights case. The Board President reprimanded Dr. Jones for speaking about Plaintiff's case. On the agenda was Claims Auditor Longevity and Payroll events from the prior day. The WASA President made a presentation for her employee's (Payroll clerk) longevity payments and used Plaintiff's personal salary information back to 2004 to justify the

presentation. Trustee Allen asked the Superintendent what should be done about the Longevity payments. The Superintendent stated that if the Payroll Clerk didn't get the longevity payment then no one should get it. Many of the Board Trustees shook their heads in agreement.

20. On July 10, 2018, a reorganization Meeting at which Plaintiff would normally be appointed was adjourned. Instead, Plaintiff was given a provisional 30-day appointment.

21. On July 23, 2018, a Continuation of Reorganization Meeting was adjourned again to the end of August 2018. This was also unprecedented. Plaintiff received another provisional 30-day appointment.

22. On August 15, 2018 at the Continuation of Reorganization Meeting, there was no appointment of Plaintiff's position. Plaintiff was then called into executive session regarding work Plaintiff did for WASA union. The Board President asked why Plaintiff worked overtime and that Plaintiff needs to inform him about her overtime which she did at 7:00. He made a comment that he didn't want any more Human Rights cases and that he wanted to win all of them. Trustee Holliday laughed hysterically behind her computer. Superintendent made comment to the Board "you need to check the cameras she left at 7 and no one was in the building". All of these were baseless accusations that Plaintiff was lying about her retaliation allegations.

23. On August 2, 2018, Plaintiff finally received her Annual Appointment as Claims Auditor. However, she wasn't given her new contract or received a raise since 2016 despite others being given retroactive raises.

24. On September 5, 2018, Plaintiff received a call from Board Vice president Yvonne Robinson saying she needed to move back to her original work location.

25. Plaintiff went on medical leave in early November of 2018 and had informed the board via writing of this. Plaintiff offered to work from home during her medical leave. The Board President Crawford approved Plaintiff's request but Sharin Wilson, also the system network administrator for the District, denied the request claiming that Plaintiff lacked the capability to work at home. Plaintiff contacted Crawford and was told that Wilson lacked the authority to deny Plaintiff's requests. Still, instead of letting Plaintiff work remotely, the District hired a temporary claims auditor.

26. Plaintiff returned to work on November 27, 2018.

27. On December 20, 2018 a special board meeting was held and assigned Plaintiff to work only two days a month. This was in direct retaliation to Plaintiff's speaking out against Dr. Jones. The resolution stated that the reassignment was due to budgetary constraints but in truth this was a pretext to permit Dr. Jones' retaliation.

28. On January 2, 2019, Plaintiff went to the district clerk for clarification as to when the new assignment would be effective and was told that it was effective as of January 7, 2019.

29. On February 2, 2019, the board voted to clarify the December 20, 2018 resolution allowing Plaintiff to work two times a month, the clarification stated that Plaintiff's benefits were cut off as of February 2, 2019

30. These resolutions effectively forced Plaintiff from her job at the District as her salary was cut as well and it cut off her health benefits, declination pay, her longevity payments and any other benefits she may have received. Also, her pay went from $2,300.00 dollars every two weeks to $300.00 dollars every two weeks. Her pension was also adversely affected as she was forced out of the district before her pension vested thus costing her 30% of the pension she had saved up.

## CLAIMS FOR RELIEF

### AS AND FOR A FIRST CAUSE OF ACTION
*Discrimination and Retaliation in Violation of New York Executive Law § 296 And 42 U.S.C. 1983*

31. Plaintiff repeats and realleges the allegations as if fully stated herein.

32. New York State Executive Law § 296 provides that: "1. It shall be an unlawful discriminatory practice: '(a) For an employer or licensing agency, because of the age, race, creed, color, national origin, sex, or disability, or marital status of any individual, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges or employment.'"

33. Defendant engaged in an unlawful discriminatory practice by retaliating against Plaintiff for participating in investigations into district corruption and fiscal misappropriation.

34. New York State Executive Law § 296(7) provides that it shall be an unlawful discriminatory practice: "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because [s]he has opposed any practices forbidden under this article."

35. Defendant engaged in unlawful discriminatory practice by wrongfully retaliating against Plaintiff.

36. By way of the foregoing, Defendants in: unilaterally changing the terms and conditions of Plaintiff's employment following her testimony in a EEOC Complaint against the District; Defendants retaliated against Plaintiff for her lawful participation in legal proceedings against them in violation of Title VII of the Civil Rights Act of 1964 and the

8

First Amendment of the United States Constitution pursuant to 42 U.S.C. 1983. Defendants repeatedly expressed the desire that Plaintiff should resign by reducing salary and pension benefits such that Plaintiff's working conditions were made intolerable violated the aforementioned laws and the First Amendment and caused Plaintiff to be constructively discharged.

**AS AND FOR THE SECOND CAUSE OF ACTION**

***Violation of the First Amendment***
***Right to Free Speech Pursuant to 42. U.S.C. § 1983***

37. Plaintiff repeats and re-alleges each and every allegation contained herein.

38. By reason of the foregoing, Defendants have unlawfully discriminated and retaliated against Plaintiff as concerns her terms, conditions and privileges of employment, in that Defendants created a hostile work environment, subjected Plaintiff to an atmosphere of adverse acts, and treated her disparately because Plaintiff spoke on matters of public concerns about Jones' mismanagement and misappropriation of District funds. These acts by Defendants are in violation of Plaintiff's rights to free speech as guaranteed under the First Amendment to the United States Constitution. As a direct result of the Defendants' violation of Plaintiff's First Amendment rights to freedom of speech, as alleged herein above, Plaintiff has suffered damages, which are set forth more fully below

**AS AND FOR A THIRD CAUSE OF ACTION**
***Negligent Hiring and Supervision***

39. Plaintiffs repeat and reallege all of the aforementioned.

40. Defendants owe a duty to exercise reasonable care in training, and supervising their employees and agents.

41. Defendants failed to take all reasonable steps to reduce risk of injury and harm to Plaintiffs, by refusing to discipline Dr. Jones and allowing her negligent conduct to continue unabated.

42. Based on the foregoing, Defendants breached their duties to Plaintiff, and as a result of their material breach, proximately caused Plaintiff significant emotional damages which were reasonably foreseeable.

43. As such, Defendants are liable for negligence, under New York State common law.


**WHEREFORE,** the Plaintiff demands judgment against the Defendants for all compensatory, emotional, psychological and punitive damages, lost compensation, front pay, back pay, liquidated damage, injunctive relief, and any other damages permitted by law pursuant to the above-referenced causes of action. It is respectfully requested that the Court grant the Plaintiff any other relief to which she is entitled, including but not limited to:

1.  Awarding reasonable attorney's fees and the costs and disbursements of this action;

2.  Granting such other and further relief that to the Court seems just and proper.

**Further,** Plaintiff demands a trial by jury.
Dated: Mineola, New York
      June 5, 2019

                              RAISER & KENNIFF, PC

                              By: Jonathan A. Tand
                              300 Old Country Road, Suite 351
                              Mineola, NY 11501
                              (516) 742-7600
                              Jonathan@raiserandkenniff.com
                              *Attorneys for Plaintiff*